IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANNIE M. HAYMORE, BY AND THROUGH
MAXINE HAYMORE, AS ATTORNEY-IN-FACT                                   PLAINTIFF

v.                                              CIVIL ACTION NO. 3:12-CV-48 HSO-RHW

CHADWICK NURSING & REHABILITATION
CENTER; CHADWICK NURSING &
REHABILITATION CENTER, LLC; AURORA
CARES, LLC; AURORA HEALTHCARE, LLC;
CORPORATIONS A-G; JANE DOES A-G;
AND JOHN DOES A-G                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is a Motion for Summary Judgment [60] filed by Defendant Chadwick Nursing and Rehabilitation Center, LLC. Plaintiff Annie M. Haymore, by and through Maxine Haymore, as Attorney-in-fact, has filed a Response [71] in Opposition to the Motion, and Defendant has filed a Rebuttal [73]. Having considered the pleadings on file, the briefs and arguments of the parties, the record, and relevant legal authorities, the Court finds that Defendant's Motion for Summary Judgment [60] should be denied.

I. BACKGROUND

Annie Haymore was a patient at Chadwick Nursing and Rehabilitation Center, LLC ("Chadwick") from July 29, 2009, until February 2, 2010. Exp. Report of Dr. Wright [71-1] at pp. 2-3. Upon entering the facility, Ms. Haymore was 79 years old and had a medical history of strokes, diabetes, hypertension, and

1

dementia. Exp. Report of Dr. Gregg [67] at p. 1. She was totally dependent on the nursing staff for locomotion, dressing, eating, personal hygiene, and bathing, and also required extensive assistance in bed mobility and toilet use. Exp. Report of Dr. Wright [71-1] at p. 2. Dr. James Farmer was her attending physician while at Chadwick. Exp. Report of Dr. Gregg [67] at p. 2.[1]

At the time of her admittance on July 29, 2009, Ms. Haymore had a dark purple area described as "mushy" on her right outer foot, measuring two centimeters by one centimeter. Exp. Report of Dr. Davey [71-2] at p. 1; Exp. Report of Dr. Lofton [67-1] at p. 1.[2] On July 30, 2009, an order was entered to treat the area with betadine, apply a four by four "ABD", wrap with kerlix, and apply heel protectors. Exp. Report of Dr. Wright [71-1] at p. 10. By August 27, 2009, the wound was documented as a Stage II wound with a small amount of bloody drainage. *Id.* at p. 1; Exp. Report of Dr. Lofton [67-1] at p. 2. On September 1, 2009, Chadwick notified Dr. Farmer about the condition of the wound, and received an order to apply Hydrafera Blue with dressings. Exp. Report of Dr. Wright [71-1] at p. 11; Exp. Report of Dr. Lofton [67-1] at p. 15. Chadwick also notified Ms. Haymore's responsible party, Maxine Haymore. Exp. Report of Dr. Lofton [67-1] at p. 15. By

---

[1] It appears from the record that Dr. Farmer was not onsite at Chadwick, but instead visited the facility to check on patients.

[2] This area has also been described as two centimeters by 0.1 centimeter. Ms. Haymore was also reported as having a scabbed area on her right knee, a discolored area to her right ankle and left inner and outer foot, two scabbed areas on her right side, and an old incision and two scabbed areas on her right subclavian. Exp. Report of Dr. Lofton [67-1] at p. 1.

September 21, 2009, Chadwick described the wound as a Stage II partial thickness wound measuring two and a half centimeters by two centimeters by 0.1 centimeter, with slough[3] noted at the center. Exp. Report of Dr. Wright [71-1] at p. 11. Dr. Farmer ordered Santyl ointment to be applied to the wound. Exp. Report of Dr. Davey [71-2] at p. 2. On September 24, 2009, Dr. Farmer personally evaluated Ms. Haymore's wound and stated that "[i]t looks fine." Facility R. [67-2] at p. 6. The wound remained the same until October 27, 2009, when it was measured as three centimeters by three centimeters by 0.1 centimeter. Dep. of Dr. Davey [71-6] at 40:20-41:27. Dr. Farmer subsequently ordered that Multidex powder replace the Santyl ointment. Exp. Report of Dr. Davey [71-2] at p. 2. On October 30, 2009, Chadwick received orders from Dr. Farmer for an arterial doppler study to be performed on Ms. Haymore. Facility R. [67-2] at p. 8. Dr. Farmer evaluated the wound the same day and noted that "[i]t looks good," and Ms. Haymore's wound continued to receive the same treatment of Multidex powder. *Id.*

On December 16, 2009, Ms. Haymore began receiving treatment from Central Mississippi Medical Center's Wound Care Clinic ("CMMC"). Exp. Report of Dr. Lofton [67-1] at p. 2. On December 17, 2009, a CMMC nurse specializing in wound care described the right foot wound as a Stage III wound with eschar,[4] measuring

---

[3] Dr. Davey described "slough" as dead tissue and pus on a wound. Dep. of Dr. Davey [71-3] at 89:1-89:3.

[4] Dr. Davey described "eschar" a type of dead tissue with no blood supply that occurs on top of a wound. Dep. of Dr. Davey [71-3] at 35:11-35:15.

five and a half centimeters by three centimeters by one centimeter deep. Exp. Report of Dr. Davey [71-2] at p. 2. The previous day, Chadwick had described the right foot wound as three centimeters by three centimeters by 0.1 centimeter deep. *Id.* Ms. Haymore was readmitted to Chadwick on December 22, 2009, but was placed in isolation due to a diagnosis of Methicillin-resistant Staphylococcus aureus ("MRSA") on her right foot. Exp. Report of Dr. Wright [71-1] at p. 12. She was prescribed Bactrim DS for the infection, and her right foot wound was documented as being a Stage III wound measuring four centimeters by four centimeters with a foul odor. Exp. Report of Dr. Davey [71-2] at p. 3.

The condition of Ms. Haymore's right foot continued to deteriorate. In early January 2010, she was diagnosed with osteomyelitis by an infectious disease specialist. Exp. Report of Dr. Gregg [67] at p. 2. The specialist informed Ms. Haymore that the wound was very unlikely to heal and that an amputation would be necessary for the infection to resolve. *Id.* On February 2, 2010, Ms. Haymore underwent an above-the-knee amputation of her right leg. *Id.*

Plaintiff filed her Complaint [1-2] alleging negligence on January 23, 2012. Plaintiff argues that Defendant breached the applicable standard of care resulting in the pain and suffering of Ms. Haymore, including the amputation of her right leg. Defendant now seeks summary judgment, arguing that Plaintiff has failed to establish a *prima facie* case of medical negligence by identifying a specific breach of the nursing standard of care that caused harm to Ms. Haymore. Plaintiff has designated two expert witnesses in this case, Dr. Rosalind Wright and Dr.

Christopher M. Davey.[5] Defendant has also designated two expert witnesses, Dr. Katherine Travis Gregg and Dr. Susan Lofton.

## II. DISCUSSION

A.   Legal Standard

Summary judgment is appropriate where the "movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the initial burden of identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

If the movant meets this initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When deciding whether a genuine issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)(quoting

---

[5]Defendant has not argued that Plaintiff's witnesses are unqualified to testify as experts.

*Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case who will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322 (1986).

The Court has subject matter jurisdiction over this case according to diversity of citizenship. Accordingly, the applicable substantive law is Mississippi law. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011).

B.  Analysis

Defendant argues that Plaintiff cannot establish a *prima facie* case of medical negligence because the alleged breaches of the nursing standard of care identified by Plaintiff's nursing expert, Dr. Wright, were not identified as proximate causes of Plaintiff's injuries by Plaintiff's expert physician, Dr. Davey. Upon review of the record, and for the reasons more fully discussed below, the Court finds that Plaintiff's experts have identified purported breaches of the nursing standard of care that a reasonable jury could find proximately caused pain and injury to Plaintiff, which are sufficient to defeat summary judgment.

In order to establish a *prima facie* case of medical negligence in Mississippi, a plaintiff must show that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury, (2) the defendant failed to conform to that required standard, (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and (4) the plaintiff was injured as a result. *Vaughn v. Mississippi Baptist Medical Center*,

20 So. 3d 645, 650 (Miss. 2009). Medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience. *Id.* "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007). Nurses may not testify as to medical causation, but a qualified nurse is permitted to testify concerning the nursing standard of care and any deviations on the part of the nursing staff from that standard of care. *Vaughn*, 20 So. 3d at 656.

Plaintiff designated Dr. Wright to testify as to Chadwick's breaches of the nursing standard of care.[6] Her expert report and deposition testimony primarily focus on the alleged failure of Chadwick's nursing staff to "appropriately and accurately assess," which led to a failure to develop and implement a plan of care specific to Ms. Haymore's needs. Exp. Report of Dr. Wright [71-1] at p. 5. Dr. Wright's report described the standard of care required of nursing facilities as it pertains to assessments:

> The Standard of Care requires that a nursing facility conducts initially and periodically a comprehensive and accurate assessment. The intent of the assessment is to provide information to develop a plan of care based

---

[6] Dr. Wright is a registered nurse with over thirty years of experience, and holds a Doctorate in Nursing Practice. Because Dr. Wright is not a physician, her testimony must be constrained to setting forth the nursing standard of care and identifying breaches of the nursing standard of care.

on the resident's status. Facilities have an ongoing responsibility to assess the resident. **The assessment must accurately reflect the condition of the residents.** The initial assessment provides the baseline for future assessments. If the interdisciplinary team identifies a change in the resident's condition they have a responsibility to consult with the physician and document the initial change.

*Id.* at p. 3 (emphasis added).

Dr. Wright specifically identified Chadwick's assessments of Ms. Haymore's right foot wound as constituting a breach of the nursing standard of care. She testified in her deposition as follows:

> Q: I like to ask experts to describe in their own words what their expert opinions are in a case. I plan to go through your expert report with you, but can you just generally tell me what your expert opinions are, Dr. Wright.
>
> A: My expert opinions in this case is [sic] clearly, there was [sic] some concerns regarding the assessment and the documentation of the assessment, particularly as it pertains to the pressure ulcer that was on her right outer foot. The right outer foot on occasion received two treatments that typically you would not see administered together. The documentation of the size of the area on the right outer foot was not consistent. Subsequently, the right outer foot continued to worsen to the point of it becoming gangrenous and requiring amputation.

Dep. of Dr. Wright [71-4] at 19:8-70:3.

Dr. Wright explained what she believed was evidence of an inaccurate assessment:

> Q: Did you determine whether Ms. Haymore was provided the wrong treatment at any time?
>
> A: What I can see is that the pressure ulcer continued to worsen, and I can see that at times they indicate it's one type of pressure ulcer when, in fact, it's another. And because it's another, that can easily lead to necrosis.

*Id.* at 95:1-95:10.

8

Dr. Wright testified about the importance of accurate assessments:

> **So if you are not doing an accurate assessment**, then what you're doing is when you call the doctor to tell the doctor what's going on, **you're not telling the doctor the right thing**. So then the doctor is going to provide or recommend a treatment based upon what you're saying. And if you're not saying the right thing from the very beginning, **chances are the resident might receive the wrong type treatment because you have not completed an accurate assessment.**

*Id.* at 92:16-93:3 (emphasis added).

The reasonable import of Dr. Wright's expert report and deposition testimony is that, in her opinion, Chadwick breached the nursing standard of care by failing to provide accurate assessments of Ms. Haymore's wound, which led to Chadwick providing inaccurate information to Ms. Haymore's doctor.

This purported breach of the nursing standard of care aligns with Dr. Davey's expert opinion regarding what proximately caused Ms. Haymore's injury. He opined that the "[t]he right leg above-knee amputation was due to a mismanaged bruise and wound on the right foot, which was allowed to progress to an advanced stage by the nursing staff." Exp. Report of Dr. Davey [71-2] at p. 5. In his expert report, Dr. Davey identified several breaches of the nursing standard of care which he believes proximately caused the mismanaged wound to deteriorate. Dr. Davey pointed to the inaccuracy of Chadwick's assessment of Ms. Haymore's wound on December 16, 2009, as one of these identified breaches:

> There is a very large difference between Chadwick Nursing Home's description of the right foot wound on 12/16/09 and the CMMC hospital nurse specialist's description on the following day 12/17/09. The CNH description minimizes the severity of the wound, whereas the CMMC description describes a much larger, deeper wound with necrosis. Note

9

>    that the eschar described on 12/17/09 would have taken several days to
>    develop.

*Id.* at p. 4.

Dr. Davey elaborated on this point in his deposition:

>    Q: All right, Dr. Davey, what I'd like for you to do is just list for me your opinions in this case, and if you need to refer to your expert report you can do that, but I'd like, if you could, just describe for me what your opinions are in what you've reached.
>
>    A: . . . things get–continue to get worse, but they don't document that, that it's continuing to get worse, so by 12-16-09 they're still describing it as a very thin shallow wound, but the very following day at CMMC they document a much deeper and more serious wound which I'm sure was there on 12-16 as well as 12-17-09 and probably for some considerable period of time beforehand. **So the treatment was all wrong.** It wasn't changed according to the changing situation and then the documentation by the 12-16-09, 12-17-09 **records was** [sic] **inaccurate** and they didn't do anything until she's sent to the wound care clinic with a very slow pulse which they apparently hadn't noticed. So by the time she got to CMMC, as we've already discussed, it was a serious wound and things went downhill from there and they could not resolve the situation and she ends up with an amputation about a month later.

Dep. of Dr. Davey [71-3] at 62:11-63:7 (emphasis added).

    Taken together, Dr. Davey's expert report and deposition testimony identified Chadwick's inaccurate description of Ms. Haymore's wound on December 16, 2009, as a reason why Ms. Haymore's wound received inadequate treatment.[7] This is consistent with Dr. Wright's opinion that Chadwick's inaccurate assessments constituted a breach of the nursing standard of care. Viewing the record in a light

---

[7] Dr. Davey was not critical of Chadwick's assessments of Ms. Haymore's wound, other than the assessment on December 16, 2009. Dep. of Dr. Davey [71-3] at 77:14-77:16.

most favorable to Plaintiff, Dr. Wright's and Dr. Davey's deposition testimony and expert reports identify a purported breach of the nursing standard of care that proximately caused Ms. Haymore's injury, namely that Chadwick failed to adequately and accurately assess Ms. Haymore's foot wound, thus leading to the deterioration of the wound. Plaintiff has proffered competent evidence to show that there are material facts in dispute on the elements of breach of the standard of care and proximate causation, which are sufficient to survive summary judgment.

In support of its Motion for Summary Judgment, Defendant points to portions of Plaintiff's expert depositions where Dr. Wright's identified breaches of the standard of care do not accord with Dr. Davey's opinion as to what caused Ms. Haymore's condition to deteriorate.  Even if Defendant were correct that Dr. Wright's and Dr. Davey's opinions together do not establish a *prima facie* case of negligence, the Court finds that Dr. Davey's expert report and deposition alone are sufficient to identify purported breaches of the nursing standard of care that proximately caused Ms. Haymore's injury. In addition to the evidence discussed previously, Dr. Davey identified four other breaches which he believes proximately caused Ms. Haymore's injury: (1) failing to adequately protect the wound; (2) not treating the foot wound with a topical antibiotic; (3) not notifying Dr. Farmer about the condition of the wound until two months after bloody drainage was noted; and (4) not referring Ms. Haymore to the wound clinic before December 16, 2009. Exp. Report of Dr. Davey [71-2] at p. 4.

Although Defendant contends that Mississippi law requires Plaintiff to present evidence from two different expert witnesses, one to testify as to the nursing standard of care and another to testify as to medical causation, the Court is not persuaded that the legal authority cited by Defendant dictates this conclusion.[8] Defendant argues that "Plaintiff cannot rest on Dr. Davey's opinions [on standard of care], since he is not a nurse expert and was not designated as an expert on nursing standards of care." Def.'s Mem. in Support of Mot. for Summ. J. [61] at p. 5. Under Mississippi law, a doctor is not precluded from testifying concerning nursing standards of care if such opinions are within the scope of the witness' knowledge. *Partin v. N. Mississippi Med. Ctr., Inc.*, 929 So. 2d 924, 930-31 (Miss. Ct. App. 2005) (holding the fact that the doctor was an OB/GYN does not by itself disqualify him from testifying to standard of care, breach, and causation regarding a claim against a nursing staff). "It is the scope of the witness' knowledge, and not the artificial classification by title that should govern the threshold question of admissibility." *Id.* Dr. Davey is a specialist in wound causation, care, and treatment, and has hospital

---

[8] According to Defendant, "[t]o establish a *prima facie* case in a nursing home malpractice lawsuit, a plaintiff must present testimony from an expert in the field of nursing to establish the nursing standard of care and a breach of that standard. Additionally, a plaintiff must present testimony from a qualified physician to establish that the identified breach in the nursing standard of care proximately caused an injury to the nursing home resident." Def.'s Mem. in Support of Mot. for Summ. J. [61] at p. 5. The case Defendant cites in support of this argument, *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645 (Miss. 2009), does not hold that there must be two different expert witnesses, but rather that a plaintiff cannot support an action for medical negligence where there is only testimony from an expert in the field of nursing who is not allowed to testify as to medical causation. *See Id.*

privileges in family practice. Pl.'s Expert Designation [67-4] at p. 8. His experience includes working in adult and geriatric medicine, as well as practicing in nursing home settings. *Id.* Although Dr. Davey is not a nurse, the record at this stage of the proceedings does not clearly indicate that he is not qualified to render an expert opinion as to a breach of the nursing standard of care sufficient to establish a question of material fact. Plaintiff has presented competent evidence sufficient to defeat summary judgment.

### III. CONCLUSION

For the foregoing reasons, the Court finds that summary judgment is inappropriate.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [60] filed by Defendant Chadwick Nursing & Rehabilitation Center, LLC, on May 14, 2014, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 28th day of August, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE